IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-261-FL

| | |
|---|---|
| CHRISTOPHER B. HARSHMAN, )<br>)<br>Plaintiff/Claimant, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

This matter is before the court on Plaintiff's motion for judgment on the pleadings [DE-19] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and the Commissioner's motion to remand [DE-22], to which the Plaintiff filed a response in opposition [DE-23]. Plaintiff Christopher B. Harshman ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Remand be denied, and the final decision of the Commissioner be reversed and the case remanded for an award of benefits.

## I. STATEMENT OF THE CASE

On March 2, 2007, Plaintiff protectively filed an application for a period of disability and DIB, alleging disability beginning July 5, 2006. (R. 116–17). The claim was denied initially and upon reconsideration. (R. 45–46). On October 12, 2007, Claimant requested a hearing before an

administrative law judge ("ALJ") (R. 62–64), and on July 30, 2009, ALJ Richard Perlowski held a hearing at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 28–44). On September 11, 2009, ALJ Perlowski issued an unfavorable decision (R. 10–27), and on July 20, 2010, the Appeals Council denied Claimant's request for review (R. 1–5). On October 25, 2010, Claimant filed an action in this court, and on October 18, 2011, the court allowed Claimant's motion, because the ALJ failed to address the fact that Claimant was receiving Medicaid or that he had been approved for disability benefits by a state agency, and remanded the case to the Commissioner for further proceedings. (R. 633–42); *Harshman v. Astrue*, No. 5:10-CV-458 ("*Harshman I*"), 2011 WL 4957371 (E.D.N.C. Oct. 18, 2011) (Dever, C.J.).

Claimant filed a second application for disability and DIB on February 10, 2010, also alleging disability beginning July 5, 2006, which ALJ Edward Bowling denied on June 21, 2011. (R. 615–32). The Appeals Council granted review of the subsequent claim and consolidated it with the remanded claim from *Harshman I*. (R. 643–48). In the interim, Claimant filed a third claim on June 28, 2011, which the Appeals Council determined was rendered a duplicate claim by its action on the prior two claims, and the ALJ was directed to associate the file and issue a new decision on the associated claim. *Id.* On November 5, 2012, ALJ Perlowski held a second hearing at which Claimant, represented by counsel, and a VE appeared and testified. (R. 573–91). On February 4, 2013, the ALJ issued an unfavorable decision. (R. 555–72). On November 26, 2013, the Appeals Council denied Claimant's request for review. (R. 542–46). On January 31, 2014, Claimant filed his second action in this court, and the Commissioner filed a consent motion for remand for the purpose of allowing the ALJ to "further evaluate the Plaintiff's medically determinable impairment compromise of a nerve root or spinal cord" and to consider evidence relevant to Listing 1.04A.

*Harshman v. Colvin*, No. 5:14-CV-52-FL ("*Harshman II*"), [DE-35] at 2–3 (E.D.N.C. Sept. 10, 2014). The court reversed the Commissioner's decision and remanded the case for further proceedings, specifically ordering the ALJ to "consider the medical evidence to see if the Plaintiff's impairment meets or medically equals the criteria of 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04," Listing 1.04A. *Id.*, [DE-36] (E.D.N.C. Sept. 10, 2014) (Flanagan, J.); (R. 764–71).

On February 9, 2015, the Appeals Council remanded the case, directing assignment to a different ALJ to "[p]rovide further evaluation of whether the severity of the claimant's back impairments meets or equals the requirements of Listing 1.04." (R. 774–75). On June 10, 2015, ALJ Lisa Hall held a hearing at which Claimant, represented by counsel, and a VE appeared and testified. (R. 717–40). On February 3, 2016, ALJ Hall issued an unfavorable decision. (R. 691–716). On May 16, 2016, Claimant filed the instant action seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . .

3

. and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from

4

a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the alleged onset date of July 5, 2006 through the date last insured of December 31, 2011 (the date by which Claimant must establish disability). (R. 695, 697). Next, the ALJ determined that the Plaintiff had the severe impairments of congenital fusion of C4-5, degenerative disc disease of the thoracic and lumbar spine, carpal tunnel syndrome, and chronic pain syndrome, as well as the non-severe impairment of depression. (R. 697–701). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 701).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC") finding Claimant has the ability to perform a reduced range of light work[1] as follows:

> He can lift and/or carry and push and/or pull twenty pounds occasionally and ten pounds frequently. The claimant can sit, stand, and walk for at least six hours each

---

[1] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

5

during a routine, eight-hour workday. He should have the option to change position
from sitting to standing/walking every thirty minutes. The claimant should never
climb ladders, but he can occasionally engage in other postural activities. He can
frequently, but not constantly, use the left hand for fingering or handling. The
claimant should avoid concentrated exposure to hazards, such as unprotected heights
or moving dangerous machinery. He can perform simple, routine work tasks,
meaning tasks that apply commonsense understanding to carry out instructions
furnished in written, oral, or diagrammatic form, with the ability to deal with
problems involving several concrete variables in or from standardized situations.
The claimant can frequently interact with coworkers, supervisors, and the general
public.

(R. 702–06). In making this assessment, the ALJ found Claimant's statements about his limitations not entirely credible. (R. 703). At step four, the ALJ found that Claimant was no longer able to perform his past relevant work as a highway maintenance worker. (R. 706). However, at step five, the ALJ determined Claimant could engage in other employment that is available in significant numbers in the national economy. (R. 706–07).

Claimant contends the ALJ erred by finding his impairments do not meet or medically equal Listing 1.04A for spinal disorders, and requests that the ALJ's decision be reversed for an award of benefits. Pl.'s Mem. [DE-20] at 12–17; Pl.'s Resp. [DE-23] at 1–4. The Commissioner concedes the ALJ did not evaluate certain evidence under the appropriate legal standards, but asserts that remand is the appropriate remedy rather than reversal. Def.'s Mot. [DE-22] at 1–2.

## V. DISCUSSION

The Fourth Circuit in *Radford v. Colvin* examined the remedies available to the district court upon review of an ALJ's decision:

[T]he district court reviews the record to ensure that the ALJ's findings are supported
by substantial evidence and that its legal findings are free of error. If the reviewing
court decides that the ALJ's decision is not supported by substantial evidence, it may
affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for
a rehearing.

6

> A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. There are, however, exceptions to that. *See Breeden v. Weinberger*, 493 F.2d 1002, 1011–12 (4th Cir. 1974) (reversing for award of benefits where case was quite old, record had no need to be reopened, and the case had already been on appeal once before).

*Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (some internal citations and quotation marks omitted).

## A. Listing 1.04A

To show disability under the listings, a claimant may present evidence either that the impairment meets or is medically equivalent to a listed impairment. *See Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986); 20 C.F.R. § 404.1526 (regulations for determining medical equivalence). Disability is conclusively established if a claimant's impairments meet all the criteria of a listing or are medically equivalent to a listing. 20 C.F.R. § 404.1520(d). "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." S.S.R. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). In order to determine whether a medical impairment equals a listing, the ALJ is bound to "consider all evidence in [claimant's] case record about [the] impairment(s) and its effects on [claimant] that is relevant to this finding. . . . [The ALJ] also consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). "For a claimant to qualify for benefits by showing that his . . . combination of impairments is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the

7

overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531. "Plaintiffs bear the burden of proving their condition meets a listing and, accordingly, the responsibility of producing evidence to sustain their claims." *Rowe v. Astrue*, No. 5:07-CV-478-BO, 2008 WL 4772199, at *1 (E.D.N.C. Oct. 28, 2008) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Thus, where a claimant "fails to articulate why h[is] medical impairments do, in fact, meet all of the elements of a given listed impairment," he fails to meet his burden. *Id.* (citing *Sullivan*, 493 U.S. at 530).

Listing 1.04 addresses disorders of the spine and contains three distinct subsections. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. Both the court's September 10, 2014 remand order and the Appeals Council's February 9, 2015 remand order specifically directed the ALJ to consider the first subsection, Listing 1.04A. (R. 765, 774). To satisfy Listing 1.04A, a claimant must show a disorder of the spine "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with the following:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

*Id.* § 1.04A; *see Drotar v. Colvin*, No. 7:13-CV-265-FL, 2015 WL 965626, at *5 (E.D.N.C. Mar. 4, 2015) (discussing the criteria to meet or equal Listing 1.04A).

The ALJ determined at step three that Claimant's impairments did not meet or medically equal Listing 1.04, explaining as follows:

> The medical evidence establishes degenerative disc disease of the thoracic and lumbar spine as well as congenital fusion of C4-5, but fails to satisfy the criteria of

8

section 1.04. Specifically, the record is devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation. The record reflects generally intact motor strength and only sporadic, non-sustained instances of reduced motor strength throughout the record with the majority of examinations finding full motor strength throughout. Further, he has intact reflexes, retains a normal gait and a normal neurological examination with negative straight leg raising and intact sensation. Notably, an EMG showed no evidence of mid to lower cervical radiculopathy.

(R. 701). The Commissioner concedes that the ALJ did not properly evaluate evidence in the record demonstrating that Claimant experienced motor strength loss, reflex deficits, range of motion deficits, and neuro-anatomic distribution of pain. Def.'s Mot. [DE-22] at 1 (citing, *e.g.*, (R. 362) (July 9, 2007 treatment note from Dr. Landau, Claimant's primary care physician, reflecting limited range of motion in the neck and back); (R. 510–11) (May 14, 2007 treatment note from neurological consultation with Dr. Giliani reflecting Claimant experienced a reflex deficit in the left brachioradialis (a forearm muscle) and neck pain with a radicular pattern and parasthesias involving the hand); (R. 1105) (October 15, 2007 treatment note from Dr. Kremer indicating Claimant had complaints of arm tingling and reduced muscle strength in the left arm)). Nevertheless, the Commissioner argues that the record contains evidentiary conflicts, indicating both normal and abnormal findings, and that remand is appropriate under *Radford* and Social Security Acquiescence Ruling ("AR") 15-1(4) (implementing *Radford*) so that the ALJ can weigh the conflicting evidence in the first instance. *Id.* at 2 (citing (R. 997, 1159, 1188, 1312, 1316) (treatment notes from Dec. 2008, Mar. 2010, Mar. 2011, Apr. 2011, and July 2011 indicating normal strength and reflexes)).

This case is distinguishable from *Radford* in several material respects. First, in *Radford* the court found the ALJ's decision regarding the application of Listing 1.04A was "devoid of reasoning" because the ALJ summarily concluded that no listing was met, stating only that Listing 1.04A had

9

been considered in particular and that the state medical examiners had concluded no listing was met. 734 F.3d at 292, 295. Here, at step three, the ALJ made findings regarding the requirements of Listing 1.04A, including that the record was "devoid of evidence of nerve-root compression," "reflects generally intact motor strength and only sporadic, non-sustained instances of reduced motor strength," and that Claimant had "intact reflexes." (R. 701). Furthermore, prior to considering Listing 1.04A, at step two the ALJ engaged in a detailed discussion of Claimant's neck and back impairments. (R. 697–700). The ALJ acknowledged Claimant's "history of musculoskeletal impairments including congenital fusion of C4-5 and degenerative disc disease of the thoracic as well as lumbar spine" and discussed a substantial amount of evidence that would support a finding that Claimant's impairments meet the requirements of Listing 1.04A, including that in late 2005 Claimant experienced "neck pain radiating into the left upper extremity;" in July 2006 on examination Claimant had a "mildly positive impingement sign with 4/5 motor strength in left upper extremity elbow extension" and that his pain was "unrelieved and worsening;" in 2007 Claimant's "complaints of left upper extremity, neck and back pain continued" and in January 2007 Claimant "exhibited decreased left upper extremity strength;" Claimant "reported persistent neck, arm, back and leg pain in December 2008," and exhibited "a limited range of motion in the lumbar spine and neck due to pain;" and in March 2010, a consultative examination revealed "decreased range of neck motion in all directions." (R. 697–99). The ALJ also discussed periods where Claimant demonstrated full range of motion, full motor strength, and normal sensation in the neck and back. *Id.*

Unlike the ALJ's decision in *Radford*, the ALJ's decision here states her reasoning; however, in contravention of *Radford* and AR 15-1(4), the ALJ impermissibly required Claimant to

10

demonstrate the presence of all the Listing 1.04A criteria simultaneously. Because there were periods where some of the symptoms were absent, the ALJ determined Listing 1.04 was not met. (R. 701). The court in *Radford* explained,

> Listing 1.04A requires a claimant to show only what it requires him to show: that each of the symptoms are present, and that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months. 20 C.F.R. § 404.1509. A claimant need not show that each symptom was present at precisely the same time—i.e., simultaneously—in order to establish the chronic nature of his condition. Nor need a claimant show that the symptoms were present in the claimant in particularly close proximity. As the Commissioner recognizes, abnormal physical findings may be intermittent, but a claimant may nonetheless prove a chronic condition by showing that he experienced the symptoms over a period of time, as evidenced by a record of ongoing management and evaluation.

734 F.3d at 294 (citation and internal quotation marks omitted). In most cases, remand would be appropriate to allow the ALJ to further consider Listing 1.04A in light of *Radford* and AR 15-1(4), but this case is the exception to the rule, presenting the "rare circumstances" justifying reversal and an award of benefits. *Id.* at 295 (citing *Breeden*, 493 F.2d at 1011–12 (reversing for award of benefits where case was quite old, record had no need to be reopened, and the case had already been on appeal once before)).

First, this case is old. Claimant filed his first claim for benefits more than ten years ago, and the Commissioner has yet to properly adjudicate it. (R. 116–17). Second, this case is on appeal for the third time. In *Harshman II*, the court specifically ordered the ALJ on remand to "consider the medical evidence to see if the Plaintiff's impairment meets or medically equals the criteria of 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04," Listing 1.04A. No. 5:14-CV-52-FL, [DE-36] (E.D.N.C. Sept. 10, 2014) (Flanagan, J.); (R. 764–71). The ALJ was given the opportunity to properly address

11

Listing 1.04A, but failed to apply the correct legal standard as set forth in *Radford*.² *Cf. Wiwel v. IBM Med. & Dental Benefit Plans for Regular Full-Time & Part-Time Employees*, No. 5:15-CV-504-FL, 2017 WL 1184066, at *9 (E.D.N.C. Mar. 29, 2017) (concluding remand for further proceedings rather than reversing for an award of benefits was the correct remedy, in the context of reviewing the denial of benefits under an ERISA-governed employee benefit plan, but cautioning that "[s]hould procedural deficiencies noted in th[e] order persist in future action for administrative review, an award of benefits may be warranted."). Finally, there is no need for the record to be reopened. Claimant was required to demonstrate disability prior to his date last insured of December 31, 2011, so additional evidence would not be relevant, and there is substantial evidence in the record to support a finding that Claimant's impairments meet Listing 1.04A as delineated in *Radford*. *See Greene v. Colvin*, 999 F. Supp. 2d 845, 848 (E.D.N.C. 2014) (finding the ALJ's determination that the claimant's impairments did not meet Listing 1.04 was not supported by substantial evidence, reversing the Commissioner's decision, and remanding for an award of benefits where the case had been pending for nearly nine years, there had been three hearings at the administrative level, and the claimant was no longer insured for benefits after December 31, 2008, so no additional evidence could be taken in the case rendering additional proceedings pointless).

There is substantial evidence in the record that Claimant experienced neuro-anatomic distribution of pain, limited range of motion of the spine, and motor loss (atrophy with associated

---

² The record before the ALJ contained no less than three direct and conspicuous references to *Radford*: (1) the transcript from the administrative hearing at which Claimant's counsel pointed out specific exhibits in the record evidencing the requisite symptoms under Listing 1.04A and reminded the ALJ that the case has been voluntarily remanded from the district court pursuant to *Radford* (R. 722); (2) Claimant's brief from *Harshman II* arguing that the prior ALJ's decision was insufficient under *Radford* and noting that "simultaneous symptoms" are not required pursuant to *Radford* (R. 925–26); and (3) a post-administrative hearing memorandum filed by Claimant's counsel discussing the *Radford* court's interpretation of the Listing 1.04A requirements (R. 929–32).

muscle weakness or muscle weakness)³ accompanied by sensory or reflex loss, and that Claimant has suffered from nerve root compression continuously for at least 12 months. *See* (R. 362) (July 2007 treatment note indicating limited range of motion in the neck); (R. 511) (May 2007 treatment note indicating reduced reflexes in left brachioradialls and parasthesis in the left hand); (R. 515) (Dec. 2007 treatment note indicating reduced reflexes in left brachioradialls); (R. 1105) (Oct. 2007 treatment note indicating reduced muscle strength in the left arm); (R. 1118) (Mar. 2007 treatment note indicating radiculopathy in the hands probably coming from the neck); (R. 1124) (Jan. 2007 treatment note indicating reduced range of motion, reduced strength in the neck with neck and arm pain, and reporting spasms and movement in arms at night); *see also, e.g.,* (R. 191, 193, 452, 1277, 1284) (objective evidence spanning several years indicating nerve root compression, including a Nov. 2005 cervical myelogram indicating congenital fusion at C4-5 of the left zygoapophyseal joints, which includes obliteration of the left neural foramen, and an x-ray indicating no foraminal opening on the left C4-C5 with complete bony ankylosis at the level of the foramen; and a Dec. 2012 MRI of the cervical spine indicating marked narrowing of the left C4-C5 neural foramen with partial fusion at this level and stating there was no significant change from comparison MRI performed in Dec. 2010). A positive straight-leg raising test was not required because here Claimant contends Listing 1.04A is met based on his cervical spine impairment, rather than his lower back impairment. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A (requirement of positive straight-leg raising test "if there is involvement of the lower back"). Much of this evidence was discussed by the ALJ at step two.

---

³ It is noteworthy that at the hearing the ALJ stated she believed "motor loss" must be demonstrated by showing both "atrophy" and "muscle weakness" under Listing 1.04A. (R. 723–25). However, as Claimant's counsel at the hearing correctly pointed out, motor loss may be demonstrated by either "atrophy with associated muscle weakness *or* muscle weakness." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A (emphasis added); *see King v. Berryhill*, No. 1:16-CV-2519-MGL, 2017 WL 1173578, at *3 (D.S.C. Mar. 30, 2017) ("Listing 1.04(A) specifies 'motor loss' is characterized by 'atrophy with associated muscle weakness or muscle weakness.'").

(R. 697–99).

It is evident from the ALJ's stated reasoning at step three and her discussion of the evidence at step two that the she failed to apply the requirements of Listing 1.04A as set forth in *Radford* and AR 15-1(4) by requiring Claimant to demonstrate the presence of all the Listing 1.04A criteria simultaneously, and her decision that Claimant's cervical spine impairment does not meet Listing 1.04A is not supported by substantial evidence. *See McLeod v. Colvin*, 625 F. App'x 189, 191 (4th Cir. 2015) (concluding the district court did not abuse its discretion in reversing the Commissioner's decision and directing an award of benefits where, unlike in *Radford*, ALJ provided reasoning but it was not supported by substantial evidence). Given the age of this claim, the fact that the case has been appealed and remanded twice before (once specifically to consider the issue on which the Commissioner now seeks remand for a second time), and the absence of need to reopen the record, it is recommended that the Commissioner's decision be reversed and the case be remanded for an award of benefits.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's motion for judgment on the pleadings [DE-19] be ALLOWED, Defendant's motion for remand be DENIED [DE-22], and the Commissioner's final decision be REVERSED and the case REMANDED for an award of benefits.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 22, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the

14

Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

SUBMITTED, this the 8th day of August 2017.

_____
Robert B. Jones, Jr.
United States Magistrate Judge